No. 24-13268

United Sates Court of Appeals
for the Eleventh Circuit

Buckelew Farm, LLC (f.k.a. Big K Farms LLC)

Appellants/Petitioner,

v.

Commissioner of Internal Revenue,

Appellee/Respondent.

Appeal from the United States Tax Court

Docket No. 14273-17

Hon. Christian N. Weiler

Initial Brief of Appellant

Ryan C. Pulver
Guilmette Pulver LLC
1355 Peachtree St. NE
Suite 1125
Atlanta, Georgia 30309

Bryan Henderson
Guilmette Pulver LLC
1355 Peachtree St. NE
Suite 1125
Atlanta, Georgia 30309

*Attorney for Appellant*

CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Appellant Buckelew Farm, LLC submits the following list of all persons and entities known to have an interest in the outcome of this appeal:

Asbury, Anson, Prior Counsel for Petitioner

Asbury Law Firm, Prior  Counsel for Petitioner

Big K LLC, Tax Matters Partner, Appellant

Brimer, Kirsten E., Office of Chief Counsel, Internal Revenue Service

Bringer, Norah E., Attorney, Tax Division, United States Department of Justice, Counsel for Appellee

Buckelew Farm, LLC (f.k.a Big K Farms, LLC), Appellant

Conger, Ava J., Prior Counsel for Petitioner

Connelly, Nicole M., Office of Chief Counsel, Internal Revenue Service

Fowler, Lynn Ernest, Prior Counsel for Petitioner

Fox Rothschild LLP, Prior Counsel for Petitioner

Gardner, III, Robert Brian, Prior Counsel for Petitioner

Gorman, Keith L., Office of Chief Counsel, Internal Revenue Service

Guarnieri, John Anthony, Office of Chief Counsel, Internal Revenue Service

Guilmette Pulver, LLC, Counsel for Petitioner

Hall, Kenneth D., Prior Counsel for Petitioner

Hoard, Vivian D., Prior Counsel for Petitioner

Howard, Matthew Jay, Prior Counsel for Petitioner

Hubbert, David A., Tax Division, United States Department of Justice

Kelley, R. Matthew, Office of Chief Counsel, Internal Revenue Service

Kilpatrick Townsend & Stockton, LLP, Prior Counsel for Petitioner

Kirman, Eugene, Office of Chief Counsel, Internal Revenue Service

Mourges, Elizabeth C., Office of Chief Counsel, Internal Revenue Service

Reed, Jeffrey S., Prior Counsel for Petitioner

Rollinson, Marjorie A., Chief Counsel, Internal Revenue Service

Rothandler, Stephen, Office of Chief Counsel, Internal Revenue Service

Rubin, Jennifer M., Tax Division, United States Department of Justice

Singleton, Burleigh L., Prior Counsel for Petitioner

Taylor English Duma LLP, Prior Counsel for Petitioner

Thornton, Michael, Senior Judge, United States Tax Court

Trebat, Randall S., Office of Chief Counsel, Internal Revenue Service

Ugolini, Francesca, Tax Division, United States Department of Justice

Vazquez, Andrew, Prior Counsel for Petitioner

Weiler, Christian N., Judge, United States Tax Court

Werfel, Daniel, Commissioner, Internal Revenue Service, Appellee

# STATEMENT REGARDING ORAL ARGUMENT

Buckelew Farms, LLC ("Buckelew Farms"), formerly known as Big K Farms, LLC, owned 1,561.65 acres in Jones County, Georgia (the "Property"). In 2013, Buckelew Farms donated a conservation easement to a tax-exempt land trust, thereby conserving 1,545 acres in Jones County, Georgia (the "Conservation Easement"). The Tax Court agreed that the conservation easement deed itself met all of the requirements of I.R.C. § 170(h); however, the Tax Court disagreed with Buckelew Farm's valuation of the Conservation Easement. Caselaw has held that in determining the highest and best value for the purposes of valuing conservation easements, the highest and best use must be "reasonably probable." *Palmer Ranch Holdings Ltd.*, 812 F.3d 982, 996 (11th Cir. 2016). This Court has explicitly held that zoning and land use regulatory approval of the asserted highest and best use must be reasonably probable. *Id*. The Tax Court ignored this Court's ruling in *Palmer Ranch* in determining that it was not reasonably probable that the Property would be rezoned, despite official correspondence from a Jones County zoning official. In making such a ruling the Tax Court ignored Georgia state law regarding zoning and land use in incorrectly determining the highest and best use of the Property prior to the encumbrance of the Conservation Easement. See *WMM Properties, Inc. v. Cobb County*, 255 Ga. 436 (Ga. 1986).

The Tax Court committed further abuses of discretion that, taken in totality, account to a structural error. See *United States v. Roy*, 855 F.3d 1133, 1139 (11th Cir. 2017). First, the Court projected in open court and admitted the personal income return of Mr. and Mrs. James Adams, III into the evidentiary record, despite the fact that neither Mr. Adams nor Mrs. Adams were actual partners in Buckelew Farms. Furthermore the Court permitted the tax return to be projected in Court and is still part of the evidentiary record. The only items redacted on the Adams' tax return was their social security numbers. This was a gross violation of I.R.C. § 6103(a) by both the Commissioner and the Tax Court. See I.R.C. § 6103(a). Second, the Court allowed the Commissioner to amend its answer to Buckelew Farms' petition nearly four years after the original answer was filed, solely and, ultimately fruitlessly, to assert civil fraud penalties against Buckelew Farms pursuant to I.R.C. § 6663. After the answer was amended, evidence came to light that this strategy was utilized in other Tax Court cases and illustrated government abuse and bad faith. See e.g., *Sydney Rds., LLC v. Comm'r*, 2024 U.S. Tax Ct. LEXIS 461 (2024). Further, the Commissioner's motion for leave to amend its answer failed to comply with the Tax Court Rules as it provided no rationale for amending the answer. See Tax. Ct. R. 41. Allowing the Commissioner to amend its answer after nearly four years in violation of the Tax Court Rules prejudiced Buckelew Farms and hampered its ability to litigate this Case thereby creating material impediments to due process. The gravity

of the I.R.C. § 6103(a) violation and the clear prejudice imposed on Buckelew Farms from the amended answer are clear abuses of discretion and the combination of the Court's ignorance of clear and controlling caselaw from this Court amount to a sufficient level of bias to constitute a structural error that affected "the framework within which the trial proceeds, rather than simply an error in the trial process itself." *United States v. Roy*, 855 F.3d 1133, 1139 (en banc) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)). Appellant requests an oral argument. The Tax Court's blatant disregard for this Court's precedent will deny deductions that Congress intended to grant to thousands of charitable donors. The Tax Court's willingness to prejudice taxpayers by allowing meritless assertions of penalties deep into the case hinders taxpayers from effectively litigating cases. Lastly, the Tax Court's refusal to protect the privacy rights of taxpayers will give the IRS carte blanche to commit violations of I.R.C. § 6103(a) in future proceedings.

TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ..............................................i

TABLE OF CONTENTS .....................................................................................iv

TABLE OF AUTHORITIES.................................................................................i

**STATEMENT OF JURISDICTION** ..................................................................1

**STATEMENT OF THE ISSUES** ........................................................................2

**STATEMENT OF THE CASE** ...........................................................................2

   A.  Procedural History ....................................................................................2

   B.  Rulings Presented for Review....................................................................5

   C.  Facts .........................................................................................................6

STANDARD OF REVIEW...................................................................................10

SUMMARY OF THE ARGUMENT ....................................................................11

ARGUMENT ......................................................................................................12

   A.  The Court erred in dismissing the legal implication of the Zoning Letter in determining the highest and best use of the Property. ........................................12

   B.  The Court, by allowing the Commissioner to project Mr. and Mrs. Adams' personal tax return in open court and by admitting Mr. and Mrs. Adams' tax return into evidence, violated I.R.C. 6103. ..........................................19

   C.  Violation of a federal statute in court by a judge or the allowance of counsel for the Commissioner to flagrantly violate a federal statute is not a harmless error.......................................................................................................29

   D.  The Tax Court's Rulings Were Abuses of Discretion and Had a Substantial and Injurious Effect and Influence on the Outcome ...........................................30

CONCLUSION ....................................................................................................34

CERTIFICATE OF COMPLIANCE ...................................................................36

CERTIFICATE OF SERVICE.............................................................................37

TABLE OF AUTHORITIES

**Federal Cases**

Abramson v. Gonzalez,
	949 F.2d 1567, 1581 (11th Cir.1992)…………………………………..30

Arizona v. Fulminante,
	499 U.S. 279, 310 (1991) …………..………………………………..iii

Ash v. Commissioner,
	96 T.C. 459, 469 (1991) …………...………………………………..30

Brewer-Giorgio v. Producers Video, Inc.,
	216 F.3d 1281, 1284 (11th Cir. 2000) ………………………..……..30

Campbell v. Emory Clinic,
	166 F.3d 1157, 1162 (11th Cir. 1999) ………………..………………30

Champions Retreat Golf Founders, LLC v. Comm'r,
	T.C. Memo 2022-106…………………………………………………..13

Church of Scientology v. IRS,
	484 U.S. 9, 17 (1987)…………………………………………………..22

Commissioner v. Estate of Long,
	304 F.2d 136, 141 (9th Cir. 1962) ………………..………………....30

Confidential Informant 92-95-932X v. United States,
	45 Fed. Cl. 556, 558 (2000)………………………………………..23, 24

Diamond v. United States,
	944 F.2d 431, 434 (8th Cir. 1991) …………………………………28-29

Econfina Res., LLC v. Comm'r,
	2024 U.S. Tax Ct. LEXIS 709……………………………………..31-32

ES NPA Holding, LLC v. Comm'r,
	T.C. Memo 2021-68…………………………………………………..20-21

Esgar Corp. v. Comm'r,
    103 T.C.M. 1185, (2012), aff'd, 744 F.3d 648 (10th Cir. 2014).….13

Estate of Blount v. Comm'r,
    428 F.3d 1338, 1342 (11th Cir. 2005)……………………………10

Estate of Jelke v. Comm'r,
    507 F.3d 1317, 1321 (11th Cir. 2007)…………………………..10, 15

Estate of Wallace v. Comm'r,
    965 F.2d 1038, 1044 (11th Cir. 1992)…………………………10

Glade Creek Partner, LLC v. Comm'r,
    2022 U.S. App. LEXIS 23351 (11th Cir. 2022)…………………..13

Hester v. Int'l Union of Operating Eng'rs,
    941 F.2d 1574, 1578-79 (11th Cir. 1991)…………………………31

In re Engle Cases,
    767 F.3d 1082, 1109 (11th Cir. 2014)…………………………….31

In re United States,
    669 F.3d 1333, 1338 (Fed. Cir. 2012)………………………..20, 23, 24

Johnson v. Sawyer,
    120 F.3d 1307 (5th Cir. 1997)…………………………………22, 23

Joint Star Props., LLC v. Comm'r,
    2024 U.S. Tax Ct. LEXIS 460…………………………………31-32

Lakepoint Land II, LLC v. Comm'r,
    T.C. Memo 2023-111…………………………………………...11

Maynard v. Bd. of Regents,
    342 F.3d 1281, 1286-1287 (11th Cir. 2003)………………………30

McKinley Brooks, LLC v. Comm'r,
    2024 U.S. Tax Ct. LEXIS 717………..………………………….31-32

Murphy v. Comm'r,
    T.C. Memo 2023-72……...………………………………………11

Murfam Enters. LLC v. Comm'r,
    T.C. Memo 2023-73…………………………………………...14

Ocmulgee Fields, Inc. v. Comm'r,
    613 F.3d 1360, 1364 (11th Cir. 2010) …………………………...10

Olson v. United States,
    292 U.S. 246, 255 (1934) ………………………………………..13

Palmer Ranch Holdings Ltd v. Comm'r,
    812 F.3d 982, 994 (11th Cir. 2016) …………………………10, 13, 15-17

Rajagopalan v. Comm'r,
    T.C. Memo 2020-159……………………………………………11

Rodgers v. Hyatt,
    697 F.2d 899 (10th Cir. 1983) …………………………………...29

Sarma v. Comm'r,
    45 F.4th 1312, 1322 (11th Cir. 2022) ………………………….20, 21

Silver Moss Props., LLC v. Comm'r,
    2024 U.S. Tax Ct. LEXIS 494 …………………………………31-32

Sosa v. Airprint Sys., Inc.,
    133 F.3d 1417, 1418 (11th Cir. 1998) ……………………………30

Stanley Works & Subs. v. Commissioner,
    87 T.C. 389, 400 (1986) ………………………………………….13

Sydney Rds., LLC v. Comm'r,
    2024 U.S. Tax Ct. LEXIS 461…………………………………31-32

Tampa Bay Water v. HDR Eng'g, Inc.,
    731 F.3d 1171, 1186 (11th Cir. 2013) ……………………………30

Tax Analysts v. IRS,
    117 F.3d 607, 614 (D.C. Cir. 1997) …………………………………….21

United States v. Roy,
    855 F.3d 1133, 1139 (11th Cir. 2017)………………………………..ii

Vons Cos. v. United States,
    51 Fed. Cl. 1, 18 (2001)…………………………………………………26

Walter v. Comm'r,
    753 F.2d 35, 38 (6th Cir. 1985) …………………………………….......10

**Federal Statutes**

I.R.C. § 170(h)………………………………………………………………….2

I.R.C. § 501(c)(3) ………………………………………………….........6

I.R.C. § 509(a)(2) ………………………………………………….........6

I.R.C. § 6103(a) …………………………………………………..19-24, 28-29

I.R.C. § 6103(b) …………………………………………………………..19

I.R.C. § 6103(b)(8) …………………………………………………..........19

I.R.C. § 6103(h) …………………………………………………………..19

I.R.C. § 6103(h)(1) …………………………………………………..........19

I.R.C. § 6103(h)(4) ……………………………………………………19-21

I.R.C. § 6221 (2017) …………………………………………………...21

I.R.C. § 6226(c) (2017) …………………………………………………..19-20

I.R.C. § 6226(d) (2017) …………………………………………………..20

I.R.C. § 6234………………………………………………………………....1

I.R.C. § 6662…………………………………………………………8

I.R.C. § 6663………………………………………………..3, 31-32

I.R.C. § 7213 ………………………………………………………..28

I.R.C. § 7442 ………………………………………………………...1

I.R.C. § 7482(a)(1) ………………………………………………...1

I.R.C. § 7482(b) …………………………………………………...1

**Regulatory Materials**

Treas. Reg. § 1.170A-1(a)…………………………………………...12

Treas. Reg. § 1.170A-1(c)(2) ……………………………………...12

Treas. Reg. § 1.170A-14(h)(3)(i) ………………………………12-13

Treas. Reg. § 1.170A-14(h)(3)(ii)………………………………...24

Treas. Reg. § 301.6103(k)(6)-1(a)(2)……………………………...24

Treas. Reg. § 301.6103(k)(6)-1(c)(1) …………………………...24

**Tax Court Rules**

Tax Ct. R. 41……………………………………………………...30

Tax Ct. R. 41(a) …………………………………………………30, 32

Tax Ct. R. 160 …………………………………………………….28

Tax Ct. R. 247……………………………………………………19-20

**Legislative Materials**

Bipartisan Budget Act of 2015 ("BBA"), Pub. L. No. 114-74, § 1101, 129 Stat. 625-628 (2015)……………………………………………………..19

House Conf. Rep. No. 94-1515……………………………………………21

Staff of Joint Comm. On Tax, 94th Cong., General Explanation of the Tax Reform Act of 1976 (December 29, 1976)……………………………………21, 22, 23, 24

Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub. L. No. 97-248, § 401, 96 Stat. 648-671 (1982)………………………………………………19

Tax Reform Act of 1976,
Pub. L. No. 94-455, § 1202, 90 Stat. 1667-1685 (1976)……………………….19

**State Cases**

Barker v. County of Forsyth,
     248 Ga. 73, 76 (1981).............................…………………………16, 17

Beugnot v. Coweta County,
     231 Ga. App. 715 (1998)………………………….......................17

Brown v. Carson,
     313 Ga. 621, 623 (Ga. 2022)…………………………………..16, 17

WMM Properties, Inc. v. Cobb County,
     255 Ga. 436, 439 (Ga. 1986)…………………………………..16, 17

**State Statutes**

O.C.G.A. §§ 44-10-1, et seq…………………………………………………6

## STATEMENT OF JURISDICTION

This is an appeal of the April 21, 2024 final decision of the United States Tax Court, which determined that Appellant was entitled to a charitable contribution deduction of $4,595,000 rather than the $47,570,000 claimed. The Tax Court had jurisdiction pursuant to 26 U.S.C. §§ 6234 and 7442. This Court has jurisdiction to review decisions of the Tax Court pursuant to 26 U.S.C. § 7482(a)(1). Venue for this appeal is proper in the Eleventh Circuit under 26 U.S.C. § 7482(b) because Appellant's principal place of business was in Georgia at the time the petition was filed in Tax Court.

## STATEMENT OF THE ISSUES

**Issue 1**: Did the Tax Court err in its determination of the highest and best use of the property in disregarding the letter from the Jone County Planning and Zoning Department?

**Issue 2**: Did the Tax Court err and commit an abuse of discretion in projecting the personal income tax return of Mr. and Mrs. James Adams, III during public court proceedings and admitting the Adams' tax return into the evidentiary record in violation of I.R.C. § 6103(a)?

**Issue 3**: Did the Tax Court err and commit an abuse of discretion by allowing the Commissioner to amend its answer nearly four years after the original amendment was filed to impose civil fraud penalties upon Buckelew Farms?

**Issue 4**: Is the totality of (a) the Tax Court's prejudice imposed on Buckelew Farms by allowing the Commissioner to amend its answers after nearly four years, (b) the Tax Court's violation I.R.C. § 6103(a), and (c) its disregard for established case law tantamount to a structural error?

## STATEMENT OF THE CASE

A. Procedural History

Buckelew Farm donated a conservation easement in 2013 that encumbered approximately 1,545 acres of real property in Jones County, Georgia near Macon, Georgia. First Stip. of Fact, ¶ 9 (Doc. 209). Appellant is a Georgia limited liability

company taxed as a partnership for federal income tax purposes and subject to the TEFRA partnership audit proceedings. First Stip. of Fact, ¶ 1 (Doc. 209). On March 30, 2017, the Commissioner issued Buckelew Farm the Final Partnership Administrative Adjustment. Petition (Doc. 1, p. 13-19). On June 27, 2017, Buckelew Farm timely filed its U.S. Tax Court Petition. Petition (Doc. 1, p. 1-12). On August 31, 2017, Buckelew Farm amended its petition to correct a typo in the caption with no substantive changes to the allegations set forth in the original petition. Amended Petition (Doc. 7, p. 1-12). On September 25, 2017, the Commissioner filed its Answer. Answer (Doc. 9). The Commissioner filed its Motion for Partial Summary Judgement on April 29, 2019. Resp. Motion for Partial Summary Judgement (Doc. 34). While the Commissioner's Motion for Partial Summary Judgement was pending, the Commissioner filed its motion for leave to amend its answer to impose the civil fraud penalty upon Buckelew Farms pursuant to I.R.C. § 6663 on February 10, 2021. Resp. Motion for Leave to File First Amended Answer to Amended Petition (Doc. 103). On March 22, 2021, Buckelew Farms filed its objection to the Commissioner's motion for leave to amend its answer. Objection to Motion for Leave to File First Amended Answer to Amended Petition (Doc. 108). On May 24, 2021, Judge Weiler granted the Commissioner's motion for leave to amend its answer. Order that Resp. Motion for Leave to File First Amend. to Answer to Amend. Petition Granted (Doc. 112). On July 1, 2021, Buckelew Farms filed its

Motion for Certification of an Interlocutory Order to Permit Immediate Appeal of the Order and memorandum in support thereof. Pet. Motion for Cert. of Interlocutory Appeal (Doc. 114); Memo. in Support of Motion for Cert. of Interlocutory Appeal (Doc. 115). The Commissioner filed its objection to Buckelew Farm's Motion for Certification of an Interlocutory Order to Permit Immediate Appeal of the Order on August 6, 2021 (Doc. 117). On September 7, 2021, the Court denied Buckelew Farms Motion for Certification of an Interlocutory Order to Permit Immediate Appeal of the Order. Order Denying Motion for Cert. of Inter. Order to Permit Appeal (Doc. 121). On September 30, 2022, the Commissioner filed its proposed trial exhibits, which included the personal federal tax return of James and Jane Adams and Ryan and Kelly Klesko. Proposed Trial Exhibits (Doc. 211, Ex. 58-J, Ex. 60-J). Buckelew Farms timely objected to the admission and use of James and Jane Adams personal tax return and the Court overruled Buckelew Farms' objection ("6103 Order"). Order that Petitioner's Objection as to Ex. 58-J is Overruled (Doc. 251). The Court sustained Buckelew Farms' objection regarding the federal income tax return for Ryan and Kelly Klesko. Transcript of Record at 1770-1771 (Doc. 262). On November 22, 2021, the Commissioner's Motion for Partial Summary Judgement was denied. Order that Respondent's Motion for Partial Summary Judgment Denied (Doc. 124). The Tax Court trial was bifurcated with the first half of the trial taking place October 17, 2022 through October 21, 2022 and the second

half of the trial taking place November 29, 2022 through December 1, 2022. Transcript of Record (Doc. 246, 247-250, 260, 262-263). On May 10, 2023, both Buckelew Farms and the Commissioner filed their initial post-trial briefs. Petitioner's Opening Brief (Doc. 280), Respondent's Opening Brief (Doc. 281). On July 14, 2024, both Buckelew Farms and the Commissioner filed their respective responding briefs. Petitioner's Reply Brief (Doc. 283.), Respondent's Answering Brief (Doc. 282). On April 25, 2024, the Tax Court issued its memorandum opinion. Memo Opinion (Doc. 285). On August 21, 2024, the Tax Court entered its decision based upon its memorandum opinion. Order and Decision Entered (Doc. 296). On October 7, 2024, Buckelew Farms filed its notice of appeal to this Court. Notice of Appeal to Eleventh Circuit (Doc. 299).

B. Rulings Presented for Review

This appeal presents three issues for review. First, the Court's determination in its memorandum opinion that the Jones County zoning regulations prohibited the asserted highest and best use ignores well-established Georgia law. Second, the Court's admission of illegally proposed personal income tax returns constitutes an abuse of discretion that produced significant prejudice. Section 6103 clearly establishes that tax returns and return information shall be confidential and prohibits federal employees and certain others from disclosing such information except as explicitly authorized by the Internal Revenue Code. Third, the Court's granting of

the Commissioner's motion for leave to amend its Answer approximately four years after the initial Answer only to impose the civil fraud penalty pursuant to I.R.C. § 6663 was an abuse of discretion.

## C. Facts

Since 2006, Buckelew Farms, formerly known as Big K Farms, LLC, owned approximately 1,561.65 acres in Jones County, Georgia (the "Property") and conserved approximately 1,545 acres in 2013 (the "Conservation Easement"). First Stip. of Fact, ¶ 8 (Doc. 209). On December 26, 2013, Buckelew Farm contributed the Conservation Easement to Southeast Regional Land Conservancy, a tax exempt public charity pursuant to I.R.C. § 501(c)(3) and I.R.C. § 509(a)(2) able to accept, hold and administer conservation easements in accordance with the Georgia Uniform Conservation Easement Act, O.C.G.A. §§ 44-10-1, *et s*eq. First Stip. of Fact, ¶9 (Doc. 209).

Prior to donating the Conservation Easement, Bucklew Farms performed substantive due diligence on the Property. A concept plan of a residential hunting resort modeled after a previously developed resort by James Adams, Barnsley Gardens ("Land Plan"), was created as well as additional due diligence was performed. First Stip. of Fact, Ex. 15-J, Ex. 33-J (Doc. 209). On June 25, 2013, on behalf of Buckelew Farms, James Adams and Ryan Kelsko met with Mr. Tim Pitrowski, the Jones County Zoning Director, to discuss the Land Plan for the

proposed development on the Property. After the meeting, Mr. Pitrowski emailed

William Noland, a Jones County attorney, outlining the conversation he had with

Mr. Adams and Mr. Klesko and attached the documents provided to him, including

the Land Plan and a draft letter regarding a zoning variance on the Property. Second

Stip. of Fact, Ex. 289-J (Doc. 219). On June 25, 2013, Mr. Pitrowski issued an

opinion letter from the Jones County Planning and Zoning Department to Mr. Adams

and Mr. Klesko (the "Zoning Letter") stating that it is his "opinion that it is 'more

likely than not' that if the [Land Plan] . . . were submitted to this jurisdiction for a

formal approval, given the current rules and regulations as we currently understand

and interpret them, the land use/subdivision plan would be approved." First Stip. of

Fact, Ex. 36-J (Doc. 209).

Georgia has the following rule regarding the reliance on communications

from a zoning official:

> Where a landowner makes a substantial change in position by
> expenditures in reliance upon the probability of the issuance of a
> building permit, based upon an existing zoning ordinance and the
> assurances of zoning officials, he acquires vested rights and is entitled
> to have the permit issued despite a change in the zoning ordinance
> which would otherwise preclude the issuance of a permit.

*WMM Properties, Inc. v. Cobb County*, 255 Ga. 436, 439 (Ga. 1986) (quoting *Barker*

*v. County of Forsyth*, 248 Ga. 73, 76 (Ga.1981). In order to obtain such a vested

right, "a landowner must show, in part, the landowner's 'reliance upon *the*

*probability* of the issuance of a building permit,' meaning that the alleged assurance

requires a representation that a building permit *will likely issue* in the future." *Brown v. Carson*, 313 Ga. 621, 623 (Ga. 2022) (emphasis added).

In anticipation of the possibility of donating the Conservation Easement, Dale W. Hayter, Jr., MAI was engaged to the perform a valuation of the Conservation Easement (the "Qualified Appraisal"). Mr. Hayter was provided with all of Buckelew Farms' due diligence of the Property. <u>See</u> generally, First Stip. of Fact, Ex. 5-J (Doc. 209). Observing that there are no comparable sales of conservation easements, the Qualified Appraisal utilized the "before-and-after" method of valuing the Conservation Easement – meaning that Mr. Hayter determined the value of the Property prior to the Conservation Easement based upon the Property's highest and best use and subsequently subtracted the value of the Property, as encumbered by the Conservation Easement. *Id.* at p. 4. In the Qualified Appraisal, Mr. Hayter concluded a $47,570,000 fair market value of the Conservation Easement. *Id.* The Appraisal Report determined the fair market value of the Property before the Conservation Easement and subtracting the fair market value of the Restricted Property after the Conservation Easement. *Id.*

Buckelew Farms was selected for examination in 2015 and the Final Partnership Administrative Adjustment was issued on March 30, 2017 (the "FPAA"). First Stip. of Fact, ¶ 3 (Doc. 209). The FPAA valued the Conservation Easement at zero and imposed accuracy-related penalties pursuant to I.R.C. § 6662.

First Stip. of Fact, Ex. 1-J (Doc. 209). Buckelew Farms timely filed its U.S. Tax Court petition and the Commissioner filed its answer with sixty days. Petition (Doc. 1). In its petition, Buckelew Farms asserted that the Commissioner erred in reducing the value of the Conservation Easement to zero. *Id.* The Commissioner denied Buckelew Farms' allegation that the Conservation Easement valuation of zero was erroneous. Answer to Amended Petition (Doc. 9). Nevertheless, at trial, the Commissioner's valuation witness appraised the Conservation Easement at $4,595,000. Resp. Appraisal Report (Doc. 186).

Further, at trial the Commissioner sought to introduce the personal federal income tax returns for Mr. and Mrs. James Adams, III into the evidentiary record as well as the personal federal income tax returns for Ryan and Kelly Klesko. Transcript of Record at 1533-1538 (Doc. 250); Transcript of Record at 1771 (Doc. 262). The Tax Court overruled Buckelew Farms' objection regarding the admission of the Adams' joint personal income tax return. Order that Petitioner's Objection as to Ex. 58-J is Overruled (Doc. 251). The Tax Court sustained Buckelew Farms' objection regarding the Klesko's joint personal income tax return. Transcript of Record at 1771 (Doc. 262). The Klesko's joint personal income tax return was not stricken from the record. Proposed Trial Exhibits (Doc. 211, Ex. 59-J).

In ignoring Buckelew Farms' state-law rights derived from the Zoning Letter and the precedent set by this Court in *Palmer Ranch*, the Court determined the value of the Conservation Easement to be $4,595,000. Memo Opinion (Doc. 285).

## STANDARD OF REVIEW

a. Standard of Review Applicable to Tax Court Decision

The Eleventh Circuit reviews "a tax court's legal conclusions and interpretations of the tax code de novo." *Ocmulgee Fields, Inc. v. Comm'r*, 613 F.3d 1360, 1364 (11th Cir. 2010). Conversely, "[t]he Tax Court's findings of fact are reviewed for clear error. *Estate of Jelke v. Comm'r*, 507 F.3d 1317, 1321 (11th Cir. 2007) (citing *Estate of Blount v. Comm'r*, 428 F.3d 1338, 1342 (11th Cir. 2005)). However, the "tax court's '[f]indings of ultimate fact which result from the application of legal principles to subsidiary facts are subject to *de novo* review." *Estate of Wallace v. Comm'r*, 965 F.2d 1038, 1044 (11th Cir. 1992) (quoting *Walter v. Comm'r*, 753 F.2d 35, 38 (6th Cir. 1985)). "A determination of fair market value is a mixed question of fact and law: the factual premises are subject to a clearly erroneous standard while the legal conclusions are subject to de novo review." *Palmer Ranch Holdings Ltd v. Comm'r*, 812 F.3d 982, 994 (11th Cir. 2016) (quoting Est. of Jelke v. Comm'r, 507 F.3d 1317, 1321 (11th Cir. 2007))

## SUMMARY OF THE ARGUMENT

In adjudicating this Case, the Tax Court ignored binding precedent and failed to reign in questionable and illegal tactics of the Commissioner. The IRS audits nearly all syndicated conservation easements and asserts zero valuation. *See e.g.*, *Murphy v. Comm'r*, T.C. Memo 2023-72 (2023); *Rajagopalan v. Comm'r*, T.C. Memo 2020-159; see also, William A. Stone III, *SCETs: Do Tax Court Valuations Reflect Government Rhetoric?*, Tax Notes Volume 180, Number 9 (August 28, 2023). Further the IRS has been caught engaging in various unethical and illegal tactics in its scorched earth strategy to eliminate syndicated conservation easements. See e.g., *Lakepoint Land II, LLC v. Comm'r*, T.C. Memo 2023-111 (2023). In such situations, Taxpayers rely on the Tax Court to fairly adjudicate these issues based upon existing law and to protect them from unscrupulous tactics of the IRS. In the current case, the Tax Court ignored this Court's binding precedent in determining the highest and best use of the conserved property prior to the encumbrance of the conservation easement. Further, the Court abused its discretion in allowing the Commissioner to amend its answer nearly four years after the initial filing with no justification. Furthermore, the Court erred by projecting Mr. and Mrs. Adams' personal tax return in open court and admitting the tax return into evidence in violation of I.R.C. § 6103(a).

The Tax Court's disregard for binding Eleventh Circuit precedent in determining the highest and best use is reviewed under a *de novo* standard as it is a legal conclusion rendering a fair market value based upon a conclusion of law. Based upon the facts in the record and relevant law, the Tax Court erred in determining the value of the conservation easement. The Tax Court further erred in allowing the Commissioner to amend its answer nearly four years after the initial filing in bad faith to fruitlessly assert civil fraud penalties against Buckelew Farms. The Court erred again in violating I.R.C. § 6103(a). These errors substantively prejudiced Buckelew Farms and, taken with the disregard for *Palmer Ranch*, creates a structural error.

## ARGUMENT

A. The Court erred in dismissing the legal implication of the Zoning Letter in determining the highest and best use of the Property.

Generally, the amount of any charitable contribution owned more than one year is the "fair market value" of the contributed property at the time it is contributed. Treas. Reg. 1.170A-1(a). "Fair market value" is the price at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having a reasonable knowledge of relevant facts. Treas. Reg. 1.170A-1(c)(2). Should there be a substantial record of sales of conservation easements comparable to the conservation easement donated, the "fair

market value of the donated easement is based on the sale prices of those comparable easements." Treas. Reg. 1.170A-14(h)(3)(i). If there is no substantial record of comparable sales of conservation easements, "the fair market value of a perpetual conservation restriction is equal to the difference between the fair market value of the property it encumbers before the granting of the restriction and the fair market value of the encumbered property after the granting of the restriction." Treas. Reg. 1.170A-14(h)(3)(i). Generally, "there is no established market for similar conservation easements and no record exists of sales of easements." *Champions Retreat Golf Founders, LLC v. Comm'r*, T.C. Memo 2022-106, 9. To determine the fair market value of the conservation easement, using the "before and after" method, the highest and best use of the property must be determined to establish the "before value." *Id.* at 11 (citing *Stanley Works & Subs. v. Commissioner*, 87 T.C. 389, 400 (1986); Treas. Reg. § 1.170A-14(h)(3)(i) and (ii)). "The highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, not necessarily as the measure of value, but to the full extent that the prospect of demand for such use affects the market value while the property is privately held." *Olson v. United States*, 292 U.S. 246, 255 (1934). "The highest and best use of the property is one that is 'reasonable and probable' and 'supports the highest present value.'" *Glade Creek Partner, LLC v. Comm'r*, 2022 U.S. App. LEXIS 23351, *14 (11th Cir. 2022). In considering the

highest and best use claimed by a taxpayer, the Courts have looked to the individual abilities of the parties involved to determine if the highest and best use is indeed reasonably probable. See *Murfam Enters. LLC v. Comm'r, T.C. Memo 2023-73, 30* (stating that the taxpayer had "substantial expertise in their industry…[and] were able to provide credible data" to substantiate the claimed value that was validated by third parties.) Once the highest and best use of the property is determined, the fair market value must be determined and there "are three widely accepted methods of estimating the [fair market value] for any property: comparable sales, income capitalization (or discounted cashflow), and replacement cost." *Esgar Corp. v. Comm'r*, 103 T.C.M. 1185, (2012), *aff'd*, 744 F.3d 648 (10th Cir. 2014).

In determining the "highest and best use" of real property prior to the encumbrance of a conservation easement, one must look to *reasonable* probabilities regarding land use and zoning. See *Palmer Ranch Holdings Ltd. v. Comm'r*, 812 F.3d 982, 989 (11th Cir. 2016). This Court agreed with the Tax Court in that a zoning board's close vote and subsequent rezoning approvals, made the taxpayer's asserted highest and best use reasonably probable. *Id*. at 992-993.

Buckelew Farms had a concept plan of the development, the Land Plan, that was reviewed and accepted by a Georgia-licensed landscape architect and the Commissioner's expert witness, Mr. Zac Ryan stated in his report that the Property's physical characteristics "don't preclude any uses that are legally permissible." Resp.

Appraisal Report, p. 71 (Doc. 186). The Commissioner and the Tax Court have erroneously concluded that the highest and best use is not reasonably probable because both assert that it is not legally permissible.

### a. The Highest and Best Use is Legally Permissible

The crux of the Tax Court's erroneous determination regarding the highest and best use of the Property is that it improperly determined that a residential hunting resort was not legally permissible. Memo Opinion, p. 53-54 (Doc. 285). Specifically, the Court concluded that, because the Property is classified as "rural residential, which allows for a development density of only one unit per five acres," the proposed development is not legally permissible. *Id.* at 53. The Tax Court's decision contradicts this Court's decision in *Palmer Ranch Holdings Ltd. v. Comm'r*, 812 F.3d 982 (11th Cir. 2016).

In *Palmer Ranch*, like this case, the highest and use determination was focused on the zoning and land use restrictions. In *Palmer Ranch*, the county commission, or the zoning authority for that particular property, denied development and re-zoning applications twice. *Palmer Ranch Holdings Ltd. v. Comm'r*, 812 F.3d 982, 988. However, "[w]ith the second denial, the [county] issued an ordinance [No. 2004-055] offering guidance on the changes that 'would be necessary in order to allow for a favorable consideration of the [zoning and development] proposal.'" *Id.* The IRS contended that it was not reasonably probable for the county to approve a

moderate density residential development on property with its zoning designation at that time because "[t]he rezoning history, which culminated in the issuance of Ordinance No. 2004-055, strongly suggests that the [county] would not have permitted [moderate density residential] development." *Palmer Ranch Holdings Ltd.*, 812 F.3d 982, 996. However, this Court reasoned that because Ordinance No. 2004-055 addressed the environmental concerns of the county commission and implied that compliance therewith would be facilitate the land-use sought for the moderate density residential development. *Palmer Ranch Holdings Ltd.*, 812 F.3d 982, 992. This Court also pointed out two other reasons that the county commission "would, in reasonable probability, approve [moderate density residential development]." *Id.* First, the closeness of the county commission's vote suggested that the decision would likely change over time. *Id.* Second, the county commission approved the land use application for a similar development on a different tract in close proximity with similar environmental impact. *Id.*

The Tax Court clearly erred in ignoring this Court's precedent in *Palmer Ranch*. In the current case, the Property is located in Georgia and, therefore, is subject Georgia state land use law. The Georgia Supreme Court has addressed the issue of vested zoning rights derived from official communications from zoning officials in several cases. These cases generally involve situations where landowners relied on assurances or approvals from zoning officials to make substantial

expenditures or changes in position. The Georgia Supreme Court has specifically stated the following:

> Where a landowner makes a substantial change in position by expenditures in reliance upon the probability of the issuance of a building permit, based upon an existing zoning ordinance and the assurances of zoning officials, he acquires vested rights and is entitled to have the permit issued despite a change in the zoning ordinance which would otherwise preclude the issuance of a permit.

*WMM Properties, Inc. v. Cobb County*, 255 Ga. 436, 439 (Ga. 1986) (quoting *Barker v. County of Forsyth*, 248 Ga. 73, 76 (281 SE2d 549) (Ga.1981). In *WMM Properties*, the court found that the landowner had a vested right in the property as zoned, free of subsequent stipulations, due to substantial expenditures and official assurances that future permits would probably issue. *WMM Properties, Inc.,* 255 Ga. 436. Similarly, in *Barker v. County of Forsyth*, the court held that a landowner who made substantial expenditures in reliance on the probability of the issuance of a building permit, based on an existing zoning ordinance and official assurances, acquired vested rights and was entitled to have the permit issued despite a change in the zoning ordinance. *Barker v. County of Forsyth*, 248 Ga. 73. In order to obtain such a vested right, "a landowner must show, in part, the landowner's 'reliance upon *the probability* of the issuance of a building permit,' meaning that the alleged assurance requires a representation that a building permit *will likely issue* in the future." *Brown v. Carson*, 313 Ga. 621, 623 (Ga. 2022). In *Beugnot v. Coweta County*, the Court of Appeals of Georgia held that the landowner had a vested right

in the continued development of his mobile home park, as he had expended substantial time, effort, and money on the development prior to the zoning ordinance and had not abandoned the nonconforming use *Beugnot v. Coweta County*, 231 Ga. App. 715 (1998).

The Zoning Letter was addressed to Big K Farms, LLC, the former name of Buckelew Farms and was signed by Mr. Timothy Pitrowski, the Jones County Zoning Director, with the oversight of counsel. First Stip. of Fact, Ex. 36-J (Doc. 209). In the current case, Buckelew Farms spent materials amounts of money on developing the market and feasibility report, appraising the Conservation Easement, and actually conserving the Property, based upon the assurances in the Zoning Letter. Buckelew Farms made a "substantial change in position" in reliance on the Zoning Letter. Accordingly, Buckelew Farms had a vested right in the zoning variance and was entitled to develop the Property in accordance with the Concept Plan.

In *Palmer Ranch,* this Court determined that changes in zoning or other variances in land use regulation may be permitted in determining the highest and best use of a property, specifically with regard to valuing conservation easements, so long as the changes or variances are "reasonably probable." *Palmer Ranch Holdings Ltd.*, 812 F.3d 982, 996. In determining what is reasonably probable, this Court evaluated (a) the closeness of the county commission's vote to grant the

variance and (b) the fact that the same county commission approved the land use application for a similar development on a different tract in close proximity with similar environmental impact. *Id.* at 992. In the current Case, Buckelew Farms had a vested right in the zoning variance giving it substantive legal authority to ensure that the necessary zoning would be obtained. This vested right goes beyond the factual probabilities set forth in *Palmer Ranch. Id.* Accordingly, it was reasonably probable that the Property would be developed in accordance with the Concept plan.

B. The Court, by allowing the Commissioner to project Mr. and Mrs. Adams' personal tax return in open court and by admitting Mr. and Mrs. Adams' tax return into evidence, violated I.R.C. 6103.

Under I.R.C. § 6103, taxpayers have fundamental rights to privacy and confidentiality of their tax returns and return information. I.R.C. § 6103. This protected information includes not just the returns themselves, but also taxpayer identity, income sources, payments, liabilities, investigations, and related third-party information. See I.R.C. § 6103(b). Section 6103 strictly controls who can access this information and under what circumstances. Section 6103 specifically states that no officer or employee of the United States or any other person "shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section." I.R.C. § 6103(a). Section 6103(b)(8) defines "disclosure" as "making

known to any person in any manner whatever a return or return information." I.R.C. § 6103(b)(8).

Section 6103(h) provides important exceptions to I.R.C. § 6103(a), specifically for tax administration purposes. Under I.R.C. § 6103(h)(1), officers and employees of the Department of Treasury can inspect returns and return information when needed to perform tax administration duties. In the context of Tax Court proceedings, 6103(h)(4) is particularly significant as it allows disclosure in judicial proceedings if: (A) the taxpayer is a party to the proceeding, or the proceeding arose out of, or in connection with, determining the taxpayer's civil or criminal liability under the tax laws; (B) the treatment of an item reflected on the return is directly related to resolving an issue in the proceeding; or (C) the return or return information "directly relates" to a transactional relationship between a person who is a party to the proceeding and the taxpayer, and such relationship directly affects the resolution of an issue in the proceeding. I.R.C. § 6103(h)(4). An indirect partner is not a party for the purposes of I.R.C. § 6103(h)(4).

### a. Tiered Partnerships

The provisions of I.R.C. § 6103 have existed nearly fifty years. Tax Reform Act of 1976, Pub. L. No. 94-455, § 1202, 90 Stat. 1667-1685 (1976). The "TEFRA" partnership audit regime was enacted as part of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"). Tax Equity and Fiscal Responsibility Act

of 1982, Pub. L. No. 97-248, § 401, 96 Stat. 648-671 (1982). Section 1101 of the Bipartisan Budget Act of 2015 ("BBA") repealed TEFRA partnership audit regime and became effective for tax years after 2017. Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 1101, 129 Stat. 625-628 (2015). Section 6226(c) and Tax Court Rule 247, cited by the Tax Court in the 6103 Order only applies to partnerships subject to the TEFRA partnership audit regime. See I.R.C. § 6226(c) (2017); Tax Ct. R. 247. In the Tax Court's reliance on I.R.C. § 6226(c) and Tax Court Rule 247, the implication is that partners of partnerships subject to the BBA are not considered "parties" and have the actual protections or I.R.C. § 6103(a), whereas partners in TEFRA partnerships do not.

Section 6226(c) provides that if an action is brought in U.S. Tax Court by a partnership, a partner is considered a party to the proceeding. I.R.C. § 6226(c) (2017). In order for a partner to be a party to a proceeding under Section 6226(c), that partner must have an interest in the outcome. I.R.C. § 6226(d) (2017). Section 6226(c) does not contemplate "tiered partnerships." See I.R.C. § 6226(d) (2017). In a tiered partnership, an individual partner is a partner in a partnership, which, in turn, is a partner in another partnership. The Tax Court has generally held that, in TEFRA proceedings, it "may determine only the partnership items of the partnership to which the FPAA relates. *ES NPA Holding, LLC v. Comm'r*, T.C. Memo 2021-68, 10-11 (2021). "If the partnership items of a lower tier partnership are included in the

FPAA of the partnership before us, we are without jurisdiction to determine those lower tier partnership items." *Id.*; See also, *Sarma v. Comm'r*, 45 F.4th 1312, 1322 (11th Cir. 2022) (stating that the concept of tiers or "'levels' matters for TEFRA partnerships because separate proceedings exist and jurisdictional limits apply to the items that can be resolved at each level" or tier). Because James Adams is not a partner in Buckelew Farms and because, under the TEFRA case law, there is no statutory authority to condense tiered partnerships, James Adams is not a "partner" in Buckelew Farms and was not a party to the Tax Court case. The Tax Court's admission of the Adams' federal income tax return is, therefore, unlawful under I.R.C. § 6103(a).

Further, in a tiered partnership structure subject to TEFRA procedures, the Tax Court's jurisdiction is limited to determining partnership items and the proper allocation of those items among partners. See I.R.C. § 6221 (2017). While indirect partners, such as James Adams, have certain participation rights in these proceedings through their status as notice partners, introducing an entire joint return filed with an indirect partner and his non-partner spouse would extend beyond the scope of partnership-level determinations and violate privacy protections of I.R.C. § 6103(a). See *In re United* States, 669 F.3d 1333, 1338 (Fed. Cir. 2012). This privacy violation is particularly problematic in TEFRA proceedings because the focus should remain on partnership-level items rather than individual partner or non-partner tax matters.

TEFRA's framework deliberately separates partnership-level proceedings from partner-level proceedings to promote judicial efficiency and consistent treatment of partnership items. See *Sarma v. Comm'r*, 45 F.4th 1312, 1322; *ES NPA Holding, LLC v. Comm'r*, T.C. Memo 2021-68, 10-11. Introducing joint return information of non-partners would not only violate Section 6103 but would also risk conflating partnership-level determinations with individual tax matters that should be addressed, if at all, in subsequent partner-level proceedings.

This position regarding tiered partnerships by the Courts is validated by the legislative history. The Joint Committee on Taxation explained that I.R.C. § 6103(h)(4) enacted restrictions to impose "in certain instances at the pre-trial and trial levels with respect to the use of third-party returns where, after comparing the minimal benefits derived from the standpoint of tax administration to the potential abuse of privacy, it was concluded that the particular disclosure involved was unwarranted." STAFF OF JOINT COMM. ON TAX, 94TH CONG., GENERAL EXPLANATION OF THE TAX REFORM ACT OF 1976, 321 (December 29, 1976). Third party tax returns may be disclosed "in the event that the treatment of an item reflected on his return is or may be relevant to the resolution of an issue of the taxpayer's liability under the Code." *Id.* "Thus, for example, the returns of subchapter S corporations, partnerships, estates and trusts may reflect the treatment of certain items which may be relevant to the resolution of the taxpayer's liability because of

some relationship (i.e., shareholder, partner, beneficiary) of the taxpayer with the corporation, partnership, estate, or trust." *Id.* The reference to partnerships as "third parties" in relation to their partners illustrates a clear distinction between partners and partnerships and highlights the impropriety of collapsing tiered partnerships and treating partners as the partnership for the purposes of I.R.C. § 6103. The Conference Committee Report provides that "[a] third party return may also be disclosed in a court proceeding, subject to the same item and transactional tests [of (h)(4)(B) and (h)(4)(C)], except that the items and transactions must have a direct relationship to the resolution of an issue of the taxpayer's liability." House Conf. Rep. No. 94-1515, p. 477-78. Legislative history and the Joint Committee on Taxation, through its use of examples, make it clear, a partner and a partnership, are not the same "party" for the purposes of I.R.C. § 6103(h)(4)(A).

Moreover, even if indirect partners are "parties" for the purposes of I.R.C. § 6226(c) and Tax Court Rule 247, the 6103 Order, without statutory authority, creates different privacy standards for different partnerships. There is no equivalent statute to I.R.C. § 6226(c) under the BBA or any other provision that makes a partner of a partnership, a "party" to a partnership's Tax Court proceeding. Further, there is no provision in TEFRA that even explicitly discusses privacy. The 6103 Order creates different privacy standards for partners of different partnerships. There is nothing in the legislative history of the Tax Reform Act of 1976 that suggests that the audit

regime of a partnership should distinguish the privacy rights of taxpayers. However, there is ample discussion that the rights conferred to taxpayers under I.R.C. § 6103 should be equally applied. Afterall, "[t]he IRS itself recognizes that to fulfill its mission it must ensure 'uniform interpretation and application of the tax laws.'" *Tax Analysts v. IRS*, 117 F.3d 607, 614 (D.C. Cir. 1997) (internal citations omitted).

### b. Construction in Favor of Privacy

In its report on the Tax Reform Act of 1976, the Joint Committee on Taxation clearly sets forth that a key impetus for Section 6103 is to provide uniform protections for taxpayers. See STAFF OF JOINT COMM. ON TAX, 94TH CONG., GENERAL EXPLANATION OF THE TAX REFORM ACT OF 1976, 315 (December 29, 1976) (explaining that the statute sought to clarify and unify the existing privacy mandates set forth by various regulations and executive orders). Further, the Joint Committee on Taxation clarifies that Section 6103 provides "as the general rule returns and return information are to be confidential and not subject to disclosure except as specifically provided in section 6103 or other sections of the Code." *Id*. (emphasis added). The Courts have agreed and repeatedly stated that exceptions from I.R.C. § 6103(a) must be construed in favor of privacy *and* exemptions must be narrowly tailored. See e.g., *In re United* States, 669 F.3d 1333, 1338 (stating that "Congress intended an even narrower exception to apply for disclosure to members of the public in judicial proceedings…."); See also, *Johnson v. Sawyer*,

120 F.3d 1307 (5th Cir. 1997). Courts have noted that "the broader legislative history of section 6103(a)… repeatedly emphasizes the vital importance to tax administration of maintaining the privacy of tax returns and return information." *In re United States, 669* F.3d 1333, 1339 (quoting *Vons Cos. v. United Stat*es, 51 Fed. Cl. 1, 18 (2001). The Supreme Court has also stated that "[t]he Senate's purpose in revising § 6103 was, as we have noted, to impose greater restrictions on the disclosure of tax data." *Church of Scientology v. IRS*, 484 U.S. 9, 17 (1987).

Courts must, in strictly construing the exceptions to Section 6103(a), must undertake a balancing test between taxpayer privacy and the need for disclosure. In *Johnson v. Sawyer*, the taxpayer's counsel agreed with the prosecutor to avoid publicity by a guilty plea; however, IRS officials, prepared a press release on the case that contained information, some erroneous, beyond that adduced at the plea hearing, then issued a corrected release. *Johnson v. Sawyer*, 120 F.3d 1307. In *Johnson*, the Court explained, based upon legislative history that exception to Section 6103(a) and disclose must balance the government's "'need for the information involved with the citizen's right to privacy and the related impact of the disclosure upon the continuation of compliance with our country's voluntary assessment system.'" *Id.* (citing STAFF OF JOINT COMM. ON TAX, 94TH CONG., GENERAL EXPLANATION OF THE TAX REFORM ACT OF 1976, 318 (December 29, 1976)). In the current Case, the Commissioner sought to introduce the James Adams'

income and deductions derived from Buckelew Farms; however, much of that information was already provided and on the record. See e.g., First Stip. of Fact, Ex. 51-J (Doc. 209). There was no need for the Adams' return to be admitted into evidence. Accordingly, should this Court apply any balancing test, the Tax Court's admission of the Adams' federal income tax return fails resoundingly.

Trial courts have taken the appellate courts' instructions and have strictly construed exceptions to I.R.C. § 6103(a). See e.g., *Confidential Informant 92-95-932X v. United States*, 45 Fed. Cl. 556, 558 (2000) (stating that for the purposes of I.R.C. § 6103(a), "only the information necessary to make that determination will be released"). This agrees with the Joint Committee on Taxation:

> Only such part or parts of the third party's return or return information which reflects the item or transaction will be subject to disclosure both before and in a tax proceeding. Thus, the return of a third-party witness could not be introduced in a tax proceeding for purposes of discrediting that witness except on the item and transactional grounds stated above.

STAFF OF JOINT COMM. ON TAX, 94TH CONG., GENERAL EXPLANATION OF THE TAX REFORM ACT OF 1976, 321 (December 29, 1976). This is also reflected in the Commissioner's own Treasury Regulations construing I.R.C. § 6103. Treasury Regulation § 301.6103(k)(6)-1(a)(2) states the following:

> Disclosure of return information for the purpose of obtaining information to carry out properly the official duties described by this paragraph, or any activity connected with the official duties, is authorized only if the internal revenue or TIGTA employee reasonably believes, under the facts and circumstances, at the time of a disclosure, the information is not otherwise reasonably available, or if the activity

connected with the official duties cannot occur properly without the disclosure.

Treasury Regulation § 301.6103(k)(6)-1(c)(1) similarly states the following:

> Disclosure of return information to the extent necessary means a disclosure of return information which an internal revenue or TIGTA employee, based on the facts and circumstances, at the time of the disclosure, reasonably believes is necessary to obtain information to perform properly the official duties described by this section, or to accomplish properly the activities connected with carrying out those official duties.

Treas. Reg. § 301.6103(k)(6)-1(c)(1). During the Tax Court proceedings for this Case, the sole contention was the value of the Conservation Easement and associated penalties. Including the Adams' entire federal income tax return with only redactions for social security numbers is in no way narrowly applying the exemptions to I.R.C. § 6103(a) found in I.R.C. § 6103(h) as required. See *In re United* States, 669 F.3d 1333, 1338; *Confidential Informant 92-95-932X v. United States*, 45 Fed. Cl. 556, 558. Furthermore, during the Tax Court trial, all income received by James Adams was documented and on the evidentiary record through other documents and testimony. First Stip. of Fact, Ex. 52-J (Doc. 209). Any of Jame Adams' charitable contribution deductions derived from the Conservation Easement donation are reviewable on the Schedule K-1s from Buckelew Farms' 2013 federal partnership tax return. The Tax Court's projection and admission into evidence of the entire Adams federal income tax return is not narrowly tailored as the entire tax return was

projected and admitted into evidence, not just the portions that provide information relating to the Conservation Easement.

C. Violation of a federal statute in court by a judge or the allowance of counsel for the Commissioner to flagrantly violate a federal statute is not a harmless error.

Tax Court Rule 160 provides that no evidentiary error and no error or defect in any ruling is "ground for granting a new trial or for vacating, modifying, or otherwise disturbing a decision or order, unless refusal to take such action appears to the Court inconsistent with substantial justice." Tax Ct. R. 160. All errors are to be disregarded unless such error or defect affects the substantial rights of the parties. *Id.* Appellate court analysis of Tax Court Rule 160 is scant, particularly in the context of I.R.C. § 6103(a) violations by a court. Nevertheless, taxpayers' rights under I.R.C. § 6103(a) are substantive and violations of the statute yield prejudice as Congress saw fit to criminalize violations under I.R.C. § 7213. The legislative history underscores the substantiality of taxpayers' rights under Section 6103 as it explicitly states that one of the purposes of Section 6103(a) is to "strengthen the rights of taxpayers" by providing definitive rules on the confidentiality of tax returns. *Diamond v. United States*, 944 F.2d 431, 434 (8th Cir. 1991). For instance, in *Diamond v. United States*, the court noted that even the suggestion of improper tax activity, without an actual decision, could devastate an individual's life, potentially destroying professional

relationships and trust, such as the confidence of their community. *Diamond v. United States*, 944 F.2d 431 (8th Cir. 1991). This underscores the severe impact that unauthorized disclosures can have on a taxpayer's reputation and livelihood and illustrating the prejudice suffered by taxpayers in instances of improper disclosure. Similarly, in *Rodgers v. Hyatt*, the court affirmed that unauthorized disclosures by IRS officials, even if the information had been previously disclosed, could still be prejudicial and warranted a new trial due to the prejudicial trial conduct. *Rodgers v. Hyatt*, 697 F.2d 899 (10th Cir. 1983). A court violating I.R.C. § 6103(a) or simply being complacent in the commission of such a violation by the Commissioner is "inconsistent with substantial justice."

### D. The Tax Court's Rulings Were Abuses of Discretion and Had a Substantial and Injurious Effect and Influence on the Outcome

The Tax Court's May 24, 2021 order to allow the government to amend its answer nearly four years after the initial petition to add fraud penalties constitutes a clear abuse of discretion for several compelling reasons, including undue delay, undue prejudice, impact on the judicial proceedings, and the clear presence of bad faith. The Commissioner's Motion for Leave to Amend was filed over four years after closing the examination and nearly four years after filing its original. Resp. Motion for Leave to File First Amended Answer to Amended Petition (Doc. 103).

This Court reviews trial courts' decision on the allowance of proposed amendments for abuse of discretion. *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1286-1287 (11ᵗʰ Cir. 2003) (citing *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998)). Tax Court Rule 41 provides the following:

> [A] party may amend a pleading only by leave of Court or by written consent of the adverse party, and leave will be given freely when justice so requires. A motion for leave to amend a pleading *must state the reasons* for the amendment and must be accompanied by the proposed amendment.

Tax Ct. R. 41(a) (emphasis added). Tax Court Rule 41 is predicated on Federal Rule of Civil Procedure 15(a). The Tax Court Rules are derived from the Civil Rules of Procedure and, caselaw construing the Rules of Civil Procedure are persuasive in interpreting the Tax Court Rules. See *Ash v. Commissioner*, 96 T.C. 459, 469 (1991). "Although 'leave to amend shall be freely given when justice so requires,' a motion to amend may be denied on 'numerous grounds' such as 'undue delay, undue prejudice to the defendants, and futility of the amendment.'" *Brewer-Giorgio v. Producers Video, Inc.*, 216 F.3d 1281, 1284 (11ᵗʰ Cir. 2000) (citing *Abramson v. Gonzalez*, 949 F.2d 1567, 1581 (11th Cir. 1992)). A trial "court may find undue delay when the movant knew of facts supporting the new claim long before the movant requested leave to amend, and amendment would further delay the proceedings. *Tampa Bay Water v. HDR Eng'g, Inc.*, 731 F.3d 1171, 1186 (11ᵗʰ Cir. 2013) (citing *Campbell v. Emory Clinic,* 166 F.3d 1157, 1162 (11th Cir. 1999)).

Moreover, the Commissioner must provide some factual support for a proposed amendment regarding fraud. See *Commissioner v. Estate of Long*, 304 F.2d 136, 141 (9th Cir. 1962). This Court has long held that "[a]lthough generally, the mere passage of time, without more, is an insufficient reason to deny leave to amend a complaint, undue delay may clearly support such a denial." *In re Engle Cases*, 767 F.3d 1082, 1109 (11th Cir. 2014) (citing *Hester v. Int'l Union of Operating Eng'rs*, 941 F.2d 1574, 1578-79 (11th Cir. 1991)). The Commissioner's Motion for Leave to Amend provides no justification for the delay, rather, the Commissioner nakedly asserted that "petitioner's managing member acted with fraudulent intent" and that "[b]oth parties should now have an opportunity to develop issues relating to the managing member's state of mind and his actions." Resp. MFL, at ¶8-9 (Doc. 103).

The Tax Court abused its discretion as the Commissioner's Motion for Leave to Amend provides no reason for the amendment to justify the delay or the prejudice suffered by Buckelew Farms nor did the Commissioner provide any information with regard to new information obtained that would support its amendment. Resp. MFL, at ¶8 (Doc. 103). The Commissioner's only justification is that it had a hunch and desired an evidentiary fishing expedition. Resp. MFL, at ¶9 (Doc. 103) (stating that the amendment would provide an "opportunity to develop issues relating to the managing member's state of mind and his actions").

Further, the Commissioner's amendment to its answer to impose the civil fraud penalty is a common tactic by the Commissioner – done in bad faith. <u>See</u> *McKinley Brooks, LLC v. Comm'r*, 2024 U.S. Tax Ct. LEXIS 717 (2024); *Econfina Res., LLC v. Comm'r*, 2024 U.S. Tax Ct. LEXIS 709 (2024); *Silver Moss Props., LLC v. Comm'r*, 2024 U.S. Tax Ct. LEXIS 494 (2024); *Joint Star Props., LLC v. Comm'r*, 2024 U.S. Tax Ct. LEXIS 460 (2024); *Sydney Rds., LLC v. Comm'r*, 2024 U.S. Tax Ct. LEXIS 461 (2024). The facts in *McKinley Brooks, Econfina, Silver Moss, Joint Star,* and *Sydney Roads* are all the same. *Id.* In all of the cases, the Commissioner amended its answer to impose the civil fraud penalty on taxpayers after a substantive amount of time had passed since the original answer was filed. *Id.* An attorney in private practice was included in the IRS Chief Counsel attorneys' group chat. *Id.* On August 23, 2023, prior to a panel on syndicated conservation easements, an IRS attorney and eight other Chief Counsel attorneys exchanged informal text messages about syndicated conservation easements in the group chat. *Id.* One Chief Counsel attorney texted that "Drita said yesterday that all of these are fraud. Should we be asserting fraud in cases where none of the badges are present?" *Id.* By "Drita," the IRS attorney meant Drita Tonuzi, the Deputy Chief Counsel of Operations of the IRS. *Id.*

The misconduct of the IRS in *McKinley Brooks, Econfina, Silver Moss, Joint Star,* and *Sydney Road* provides a *post hoc* illustration of bad faith that was

ultimately unsuccessful against Buckelew Farms; however, *McKinley Brooks, Econfina, Silver Moss, Joint Star,* and *Sydney Road* illustrate the need for the Tax Court to heed its own rules and require the Commissioner to state substantive "reasons for the amendment." Tax Ct. R. 41(a), see also, *Commissioner v. Estate of Long*, 304 F.2d 136, 141. The Court's abuse of discretion lies in its absence of inquiry on the record as to why the Commissioner amended the Answer to impose Section 6663 after four years. Further, the Court's abuse of discretion further lies in its willingness to grant the Commissioner's motion for leave to amend the answer with nominal rationale in the Commissioner's Motion for Leave to Amend. The timing of the Commissioner's amendment suggests an attempt to gain tactical advantage by waiting until Buckelew Farms had revealed their defense strategy and creating pressure to settle under threat of expanded liability. The Commissioner's delay in bringing fraud allegations until four years into the litigation suggests either a lack of diligence in case preparation, or a strategic decision to withhold these claims – neither justifies allowing such a late amendment, given the prejudice suffered by Buckelew Farms.

## CONCLUSION

In donating the Conservation Easement, Buckelew Farms effectively donated valuable development rights in the Property. These rights have significant value and need to be evaluated in accordance with actual case precedent. In the process of

evaluating the value of the Property, the Tax Court committed two distinct and salient abuses of discretion that prejudiced Buckelew Farms. The Tax Court erred in allowing the Commissioner to amend his answer nearly four years after the original was filed. The Tax Court further erred in allowing project a totally unrelated tax return in open court and admitting the return into evidence. These abuses of discretion, combined with the Court's disregard for the precedent set by this Court in *Palmer Ranch* constitute a complete disregard for the rights and due process of Buckelew Farms and a structural error. Buckelew Farms respectfully requests that this Court value the Conservation Easement as determined by Mr. Hayter and originally claimed by Buckelew Farms on its 2013 federal income tax return.

Respectfully submitted,

/s/ *Ryan C. Pulver*
Ryan C. Pulver
Guilmette Pulver LLC
1355 Peachtree St. NE
Suite 1125
Atlanta, Georgia 30309
Telephone: 770.635.5860
Ryan@guilmettepulver.com

/s/ *Bryan Henderson*
Bryan Henderson
Guilmette Pulver LLC
1355 Peachtree St. NE
Suite 1125
Atlanta, Georgia 30309
Telephone: 833.377.3060
b.henderson@guilmettepulver.com

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. This brief uses Times New Roman 14-point typeface and contains 8,206 words.

/s/ RYAN C. PULVER
Ryan C. Pulver, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2024, I electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system. I also hereby certify that the foregoing document is being served this day on all counsel of record identified on the Service List in the manner specified, via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are no authorized to receive electronically Notices of Electronic Filing.

/s/ RYAN C. PULVER
Ryan C. Pulver, Esq.

CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2024 on original signed brief and 6 copies were dispatched for delivery to the Clerk's Office of the United States Court of Appeals for the Eleventh Circuit by third-party commercial carrier for overnight delivery at the following address:

> David J. Smith, Clerk of the Court
> U.S. Court of Appeals for the Eleventh Circuit
> 56 Forsyth Street, NW
> Atlanta, GA 30303

On this same date one copy of the brief was sent to the following for delivery within three calendar days:

> Norah Bringer
> U.S. Department of Justice
> Tax Division, Appellate Section
> 950 Pennsylvania Avenue NW
> Washington, DC 20539

/s/ RYAN C. PULVER
Ryan C. Pulver, Esq.